1

2

3

4

5

6

_____ FILED _____ ENTERED
_____ LODGED _____ RECF

MAR ○ 2011   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT O  WASHINGTON
BY.                           DEPUTY

7  UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9  UNITED STATES OF AMERICA *ex rel.*
(UNDER SEAL)

10                                          **CV11  371**JLR

Plaintiff,

No.

11

v.

COMPLAINT FOR VIOLATIONS OF
THE FEDERAL FALSE CLAIMS ACT
[31 U.S.C. § 3729, *et seq.*]

12

13  (UNDER SEAL)

JURY TRIAL DEMANDED

Defendant.

14

15

16

17              **FILED IN CAMERA AND UNDER SEAL**

18

19

20

21

22              **11-CV-00371-CMP**

23

24

25

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*]
006180-11  421724 V1



HAGENS BERMAN
1918 Eighth Avenue, Suite 3300 • Seattle, WA. 98101
(206) 623-7292 • FAX (206) 623-0594

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA *ex rel.*
JANE DOE,

                                    Plaintiff,

        v.

LHC GROUP, INC.,

                                    Defendant.

No.

COMPLAINT FOR VIOLATIONS OF
THE FEDERAL FALSE CLAIMS ACT
[31 U.S.C. § 3729, *et seq.*]



HAGENS BERMAN
1918 Eighth Avenue, Suite 3300 · Seattle, WA 98101
(206) 623-7292 · FAX (206) 623-0594

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION ...................................................................................................1

3   II.     JURISDICTION AND VENUE .............................................................................2

4   III.    PARTIES ...............................................................................................................3

5   IV.     MEDICARE HOME HEALTH COVERAGE ........................................................4

6   V.      DEFENDANT'S FRAUDULENT SCHEMES .......................................................7

7           A.      Upcoding: Fraudulently Inflating Payments by Falsifying and Manipulating
8                   Patient OASIS Assessments .......................................................................7

9           B.      Billing for Ineligible, Non-Homebound Patients...................................10

10          C.      Billing for Unnecessary Care or Care That is Never Performed ...........10

11  COUNT ONE  PRESENTING OR CAUSING TO BE PRESENTED FALSE CLAIMS
12  31 U.S.C. § 3729(A)(1)(A) ..........................................................................................12

13  COUNT TWO  MAKING OR USING FALSE STATEMENTS OR RECORDS MATERIAL
                TO A FALSE CLAIM
14  31 U.S.C. § 3729(A)(1)(B) ..........................................................................................13

15  COUNT THREE  "REVERSE FALSE CLAIMS"
16  31 U.S.C. § 3729(A)(1)(G) ..........................................................................................15

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - i
006180-11  421724 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    Plaintiff-Relator Jane Doe, on behalf of herself and the United States of America, alleges

2    and claims against Defendant LHC Group, Inc. ("LHC") as follows:

3                    **I.      INTRODUCTION**

4    1.      This is an action to recover damages and civil penalties on behalf of the United

5    States of America arising from false and fraudulent records, statements, and claims made, used,

6    and caused to be made, used or presented by Defendant LHC and its agents or employees in

7    violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("the FCA" or "the Act").

8    2.      For several years, LHC Group, a Louisiana-based Home Health Agency ("HHA")

9    and corporation publicly traded on NASDAQ, has violated the FCA by devising and

10   implementing a practice and pattern of making false statements and causing submission of false

11   claims for reimbursement from the Medicare system.  According to its most recent Annual

12   Report, LHC's "Business Strategy" can be summarized in one sentence:  "Our objective is to

13   become the leading provider of post-acute services to Medicare beneficiaries in the United

14   States."  LHC "derive[s] more than 80%" of its "net service revenue from Medicare," according

15   to the same Report.  Unfortunately for taxpayers, LHC's objective to become the lead Medicare

16   beneficiary of home health care coverage is being pursued through fraud on the Medicare

17   system.

18   3.      Founded in 1994, LHC and its roughly 7,000 employees are engaged in the

19   business of providing home health services, primarily to elderly Medicare beneficiaries.  As

20   LHC states on the front page of its investor website, "[w]ith the 65 and over population in the

21   United States expected to grow from 35 million in the year 2000 to 88.5 million in 2050, LHC

22   Group sees a future where more individuals will need" its services.[1]  According to its 2009

23   Annual Report, LHC owns and operates 264 home-based service locations in 18 states, more

24   than half of which are wholly-owned, and over 95% of the balance of which are majority owned

25   or controlled by LHC.

26   [1] *See* http://investor.lhcgroup.com, visited February 22, 2011.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 1
006180-11 421724 V1


1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1     4.     Defendant LHC operates its home health business with the fraudulent intent of

2    maximizing its billing to and reimbursement from the United States through a pattern and

3    practice of:  (1) billing the United States for home health services provided to patients that it

4    knows are not homebound or otherwise do not qualify for the home health benefit;

5    (2) "upcoding" home health prospective payment data by fraudulently manipulating and altering

6    patient "OASIS" information in order to inflate Medicare prospective payments; and (3) making

7    and using false records indicating nursing visits that were never performed or only partially

8    performed.  Defendant's fraudulent conduct results in significant damage to American taxpayers.

9     5.     From 2002 to 2006, spending by the United States on home health care rose a

10    precipitous 44%, amounting to nearly $12.9 billion in 2006.  According to a report by the

11    Medicare Payment Advisory Commission, Home Health Agencies such as the Defendant

12    currently enjoy an average profit margin of nearly 16%.  In light of the explosive growth in

13    profits to private companies and cost to Medicare, potential abuse of the home health system has

14    been identified by CMS as a major concern.  In March of 2009, the Government Accountability

15    Office published a report entitled "Improvements Needed to Address Improper Payments in

16    Home Health," a report warning of the opportunities for fraud and abuse.  LHC Group has taken

17    advantage of those opportunities by violating the FCA at great cost to the federal Government

18    and the integrity of the Medicare system.

19    **II.    JURISDICTION AND VENUE**

20     6.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33 (the "Act").

21    Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Jurisdiction is also

22    authorized under 31 U.S.C. § 3732(a).

23     7.     Venue lies in the Western District of Washington pursuant to 28 U.S.C. § 1391(b)

24    and 31 U.S.C. § 3732(a), because Defendant qualifies to do business in this District, transacts

25    substantial business in this District, and can be found here.  Furthermore, Defendant committed

26    within this District acts proscribed by 31 U.S.C. § 3729.



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

8.     Prior to filing this Complaint, Plaintiff-Relator voluntarily disclosed to the Government the information upon which this action is based and substantially all material evidence and information possessed by her. To the extent that any public disclosure has taken place as defined by 31 U.S.C. § 3730(e)(4)(A), Plaintiff-Relator qualifies as an original source under both provisions of 31 U.S.C. § 3730(e)(4)(B).

### III.    PARTIES

9.     LHC Group is a Lafayette, Louisiana-based corporation engaged in the business of providing home health services. Among its nearly 300 wholly-owned or majority-controlled service locations, several operate in this District.

10.    Plaintiff-Relator Doe is a licensed registered nurse (RN) of over 2 years' experience. She began employment as a home health nurse with LHC in July, 2010 in its Salem, Oregon location. Ms. Doe immediately became aware that LHC's business practices are designed to fraudulently inflate billing to the United States by falsely representing the type and severity of patients' medical conditions. Ms. Doe was consistently instructed to falsify and alter patient assessments and nursing notes – first to create the initial false appearance that patients were sicker than they actually were, then to create the false appearance that the same patients had improved under LHC's care. Ms. Doe's employment with LHC ended on or about October 30, 2010.

11.    During her time at LHC, Ms. Doe witnessed so many instances of fraud as to reasonably conclude that Defendant's fraudulent tactics are widespread, systematic practices endemic to Defendant. Defendant's fraudulent conduct offended Ms. Doe's long-standing dedication to the mission of hospice care and to the needs of terminally-ill patients and causes her to file this Complaint on behalf of herself and the United States as a relator under the *qui tam* provisions of the False Claims Act.

12.    Prior to filing this Complaint, Plaintiff-Relator Ms. Doe voluntarily disclosed to the Government the information upon which this action is based.



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 3
006180-11  421724 V1

1918 EIGHTH AVENUE, SUITE 3300 · SEATTLE, WA 98101
(206) 623-7292 · FAX (206) 623-0594

## IV.   MEDICARE HOME HEALTH COVERAGE

13.     Through the Medicare program administered by the Center for Medicare and Medicaid Services ("CMS"), the United States provides health insurance to eligible citizens. *See* 42 U.S.C. §§ 1395, *et seq.* As part of its coverage, Medicare pays for some "home health services" for qualified patients.

14.     To qualify for home health care reimbursement under Medicare, a patient must: (1) be homebound – *i.e.*, the patient is generally confined to his or her home and can leave only by dent of considerable effort; (2) need part-time skilled nursing services or speech therapy, physical therapy, or continuing occupational therapy as determined by a physician; and (3) be under a plan of care established and periodically reviewed by a physician and administered by a qualified HHA. *See* 42 U.S.C. §§ 1395f; 1395x(o).

15.     When a patient so qualifies, Medicare will pay for:  (1) part-time skilled nursing care; (2) physical, occupational, or speech therapy; (3) medical social services (counseling); (4) part-time home health aide services; and (5) medical equipment and supplies. *Id.*

16.     Medicare pays for home health care by way of a Prospective Payment System ("PPS"). *See* 42 U.S.C. § 1395fff; 42 C.F.R. § 484. The PPS is based on a "national prospective 60-day episode payment," a rate based on the average cost of care over a 60-day episode for the patient's diagnostic group. *Id.*

17.     A patient is placed in a diagnostic group based upon the patient's comprehensive initial assessment by the HHA. 42 C.F.R. § 484.55. Upon a physician's referral, a HHA is required to make an initial assessment visit and perform a comprehensive assessment encompassing the patient's clinical, functional, and service characteristics. *Id.*

18.     Accordingly, a registered nurse must evaluate the patient's eligibility for Medicare home health care, including homebound status, and must determine the patient's care needs using the Outcome and Assessment Set ("OASIS") instrument. *Id.*



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 4
006180-11  421724 V1

19.     The OASIS diagnostic items describe the patient's observable medical condition (clinical), physical capabilities (functional), and expected therapeutic needs (service).  Based upon the OASIS information – and in turn upon the expected cost of caring for the patient – the patient's "case mix assignment" is determined and the patient is assigned to one of eighty Home Health Resource Groups ("HHRG"s).[2]

20.     The patient's HHRG assignment and other OASIS information are represented by a Health Insurance Prospective Payment System ("HIPPS") code that is used by Medicare to determine the rate of payment to the HHA for a given patient.

21.     Once the HHA has submitted the patient's OASIS information, partial payment is made by CMS based on a presumptive 60-day episode.  42 C.F.R. § 484.205.

22.     The initial base rate may be subject to upward adjustment, such as where there is a "significant change in condition resulting in a new case-mix assignment," or downward adjustment, such as where the number of predicted therapy visits substantially exceeds the number actually performed.  42 C.F.R. § 484.205.  Throughout the patient's episode, the HHA is required to maintain clinical notes documenting the patient's condition, the health services performed, and the continued need for skilled care.  *See* 42 U.S.C. § 1395x(o); 42 C.F.R. § 484.84.

23.     In order to continue receiving covered care for another 60-day episode, the patient must be re-assessed by the HHA within the final five days of the initial episode and be re-certified by a physician as requiring and qualifying for home health care.  42 C.F.R. § 484.205.

24.     Medicare will not pay for home health services provided to patients unless those patients are homebound and require intermittent skilled nursing care or skilled therapy.  *See* 42 U.S.C. § 1395f.  It is a universal requirement of the Medicare program that all services provided must be reasonable and medically necessary.  *See* 42 U.S.C. §§ 1395y(a)(1)(A) & 1396, *et seq.*;

---

[2] Medicare Claims Processing Manual, Ch. 10.1.8, "Coding of HH PPS Episode Case-Mix Groups on HH PPS Claims: (H)HRGs and HIPPS Codes."



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 5
006180-11 421724 V1

1  42 C.F.R. § 410.50.  Medicare providers may not bill the United States for medically

2  unnecessary services or procedures performed solely for the profit of the provider.  *Id.*

3      25.     To enroll as a Medicare provider, Defendant was required to submit a Medicare

4  Enrollment Application for Institutional Providers, a so-called CMS Form 855A.  In submitting

5  Form 855A, Defendant made the following "Certification Statement" to CMS:

6  
> I agree to abide by the Medicare laws, regulations and program
> instructions that apply to this provider.  The Medicare laws,
7  > regulations, and program instructions are available through the
> Medicare contractor.  I understand that payment of a claim by
8  > Medicare is conditioned upon the claim and the underlying
> transaction complying with such laws, regulations, and program
9  > instructions (including, but not limited to, the Federal Anti-
> Kickback statute and the Stark law), and on the provider's
10 > compliance with all applicable conditions of participation in
> Medicare.

11  Form CMS-855A.

12      26.     Defendant then billed Medicare by submitting a claim form (CMS Form 1450) to

13  the fiscal intermediary ("FI") responsible for administering Medicare hospice claims on behalf of

14  the United States.  *See* CMS Form 1450.  Each time it submitted a claim to the United States

15  through the FI, Defendant certified that the claim was true, correct, and complete, and complied

16  with all Medicare laws and regulations.

17      27.     Defendant thus certified that each claim for a home health prospective payment

18  represented a home health service provided to a homebound, qualifying patient in need of such

19  service, and CMS expressly conditioned its payment on the truth and accuracy of that

20  certification.  Defendant further certified that its programs were in compliance with Medicare

21  regulations, including the requirement that Defendant perform and correctly document its skilled

22  nursing and supervisory visits.

23      28.     LHC has engaged in each of the types of fraud identified above as part of its

24  scheme to fraudulently inflate its Medicare billing and defraud the United States.

25

26

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 6
006180-11  421724 V1


HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 · SEATTLE, WA 98101
(206) 623-7292 · FAX (206) 623-0594

## V.    DEFENDANT'S FRAUDULENT SCHEMES

29.    LHC operates its business with the goal of inflating profits by fraudulently submitting false patient assessment data to the Government and by billing the Government for health services that are unauthorized, unnecessary, or never performed at all.

### A.    Upcoding: Fraudulently Inflating Payments by Falsifying and Manipulating Patient OASIS Assessments

30.    Through a system of falsifying and manipulating Medicare-required patient OASIS information, LHC systematically and fraudulently boosts its Medicare prospective payments.

31.    Medicare's home health PPS is intended to cover the projected cost of home-care-qualified patient care. To that end, Medicare requires that a HHA registered nurse make an initial visit to each patient and perform a comprehensive assessment using the OASIS instrument. Medicare's prospective payment for that patient is then tied to the type and intensity – and therefore cost – of care that will be required. *See* 42 C.F.R. § 484.55.

32.    For example, a patient that is completely bed-bound manifestly requires more care – at greater expense – than a patient that is ambulatory. Similarly, some conditions, such as CVA (stroke) may require extensive, costly, physical and occupational therapy, whereas others, such as minor wound care, may require only limited skilled nursing care and instruction.

33.    With the goal of fraudulently placing patients in higher-value groups and boosting Medicare payments, LHC systematically manipulates the home care PPS by recording false OASIS data. Simply put, LHC trains its nurses and other employees to make patients appear sicker and more disabled in statements and claims to the Government than they are.

34.    LHC's first means of falsifying OASIS data is through direct instruction and influence on nurses who perform assessments; LHC openly pressures nurses to make patients look sick and disabled.



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 7
006180-11 421724 V1

1918 EIGHTH AVENUE, SUITE 3300 · SEATTLE, WA 98101
(206) 623-7292 · FAX (206) 623-0594

35.     Plaintiff-Relator Ms. Doe was frequently admonished by LHC management that "case mix equals money" and was consistently instructed by Director of Nursing Jessica Williams and Supervisor Tina Barba to always falsely document patients at the lowest functional levels in OASIS assessments – directly resulting in more valuable HHRG categories and higher PPS payments.

36.     Ms. Doe was also ordered to "front load" therapy in patient plans of care, "just in case." That is, under the guise of caution, LHC instructed Ms. Doe to devise a plan of care that included unnecessary therapy at the beginning of a patient's episode, in violation of 42 C.F.R. § 484.18. This was told to Ms. Doe during formal "OASIS C" training by "performance improvement specialist" Florine, and reinforced consistently by team managers Barba and Williams. As a result of this practice, the United States has paid for services, and continues to pay for services, that are not part of the patient's legitimate plan of care and may in fact be contraindicated by the patient's true physician-diagnosed condition.

37.     Once an RN has submitted his or her OASIS information, LHC continues to pressure its clinical personnel to falsify that information in order to make patients appear more acute than they are.

38.     Professional billing experts known as "Oasis Coordinators" ("OCs") are assigned by LHC to review OASIS files and coerce RNs to fraudulently alter OASIS information. With the goal of placing the patient in a more lucrative group, OCs push RNs to approve submission of OASIS data that does not reflect the patient's actual condition.

39.     Every LHC OASIS assessment is reviewed by an OC. OCs often are not medically trained and never see patients. In fact, they work remotely from LHC's home office in Louisiana. OCs are paid per-assessment to ensure that every patient is billed at the highest possible level, regardless of the patient's actual condition and care needs.

40.     OCs work by falsely emphasizing certain characteristics and conditions that generate higher reimbursement.



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, et seq.] - 8
006180-11 421724 V1

1    41.    The OASIS instrument is designed to place patients in categories corresponding

2  to their actual need for home care.  Thus, a patient's "primary diagnosis" is the primary condition

3  for which the patient requires care at home.  Accordingly, the patient's plan of care will be

4  primarily designed to stabilize and improve that condition.

5    42.    Of course, patients often exhibit other, secondary, "co-morbid," characteristics or

6  medical conditions that may or may not need to be addressed in the plan of care.  Using the

7  OASIS instrument, the assessing nurse must record these characteristics, which are in turn

8  accounted for by the PPS.  The corresponding HIPPS code and prospective payment will be

9  calculated to reimburse the HHA for providing that care.

10    43.    LHC, however, uses its OCs to manipulate the system by fraudulently altering

11  OASIS information to falsely emphasize conditions that generate greater reimbursement but do

12  not truly require care.  OCs target certain co-morbities that are not related to a patient's actual

13  plan of care, but that generate higher reimbursement.

14    44.    For example, Ms. Doe and LHC's other nurses are consistently instructed and

15  pressured by OCs to falsely report the OASIS assessment data for diabetic patients.  Medicare

16  pays a very high prospective rate for patients who are referred to home care for sudden onset of

17  diabetes or complications of a diabetic condition; such patients require outpatient diabetic

18  instruction as well as therapeutic treatment.  Accordingly, LHC's nurses are instructed to

19  fraudulently list diabetes as a patient's "primary diagnosis" even when that condition is entirely

20  unrelated to the actual reason the patient has been referred to home case.  Such a patient may

21  have lived with diabetes for years and require no instruction or therapy.  Diabetic instruction or

22  related therapy therefore forms no legitimate part of the patient's home health care plan.  LHC

23  falsely bills the United States and accepts payment for services that are not eligible for

24  reimbursement.

25    45.    Thus, LHC fraudulently places the patients in more lucrative HHRGs that do not

26  accurately reflect the type of care or therapy the patient requires.  In so doing, LHC falsely



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    represents to the United States that it is performing certain care that is prescribed and medically

2    necessary, when in fact it is not – in contravention of 42 U.S.C. § 1395f.  This knowing conduct

3    causes payment by the Government of millions of dollars in false claims.

4    **B.    Billing for Ineligible, Non-Homebound Patients**

5          46.    LHC regularly bills the Government for patients who are not homebound and do

6    not qualify for the Medicare home health benefit, in contravention of 42 U.S.C. § 1395f and the

7    False Claims Act.

8          47.    Many of LHC's patients simply do not qualify for Medicare home health

9    coverage.  The following are examples of patients who have been falsely billed to the United

10   States despite their obvious non-qualification and LHC's awareness of such:

11               a.    Patient L.R. was admitted by LHC in or around July of 2010.  Plaintiff-

12                     Relator witnessed L.R. ambulating easily around her neighborhood.  L.R.

13                     frequently went out to dinner with friends and took trips around town not

14                     related to medical appointments.

15               b.    Patient J.N., a patient with a wound vac for his amputated leg, received

16                     home care from LHC in or around September 2010.  This patient admitted

17                     to driving long distances for dinners and for vacations.

18         48.    Ms. Doe is aware of the routine falsification of records for improper Medicare

19   coverage of conditions which LHC knew many of its patients were not experiencing.  During

20   weekly meetings of team managers, therapists, and nurses, Ms. Doe (and others) discussed the

21   non-homebound status of these and other patients, but were told by superiors not to worry about

22   it.

23   **C.    Billing for Unnecessary Care or Care That is Never Performed**

24         49.    LHC routinely bills the United States for purported care that in fact represents no

25   part of any legitimate patient care plan, as well as care that is never performed or only partially

26   performed.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 10
006180-11 421724 V1


HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

50.     As described *supra,* LHC falsifies its OASIS assessments and plans of care to create the fraudulent appearance that patients' conditions are more acute than they actually are. In part because many of LHC's patients do not require the care that LHC's false OASIS assessments and care plans require, LHC nurses regularly record *skilled* nursing visits when, in reality, LHC nurses only briefly visit the patient's home and perform *no skilled services.*

51.     These false records and statements serve as a fraudulent foundation for LHC's claims for PPS payments, allow LHC to avoid "low utilization" repayments, and serve as the basis for fraudulent outlier payments – all in violation of, *inter alia*, 42 U.S.C. §§ 1395f; 1395x(o) and 42 C.F.R. §§ 484.18; 484.30; 484.48.

52.     Medicare's PPS payment for a given HHRG is based upon a market survey that determines the number of visits required for a patient of that diagnostic group and the average cost per visit. *See* 42 C.F.R. § 484.210. LHC falsely elicits inflated PPS payments and outliers and cuts its own costs by performing only minimal care on many patients, perpetrating and concealing its fraud through false documentation of nursing visits.

53.     LHC's policies are designed to reduce cost and ensure the false recording and use of nursing data. LHC requires its nurses to earn a certain number of "points" per payment period. Points are earned through the performance of visits and tasks. For example, a nurse earns 2 points for an admission assessment, 1.5 points for a recertification assessment, 1 point for a skilled nursing visit. LHC's licensed practical nurses ("LPN"s) are not permitted by law to perform assessment visits. *See* 42 C.F.R. § 484.55. Thus, they must earn their points through skilled nursing visits. In order to earn the requisite point, however, a LPN must perform 35 nursing visits per week. RNs are also required to earn points at the rate of 6 visits per day. Given that travel between patients' homes averages at least 20-25 minutes, this is an impossibility.

54.     The inevitable result is that LHC's LPNs falsely record nursing visits that never occur or that are extremely brief and do not constitute skilled home health services. Relator is



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 11
006180-11 421724 V1

1    told by her patients (including patients J.N., S.N., and W.M.) on a daily basis that LHC's LPNs

2    perform extremely brief, cursory visits that often involve no actual health care.  Relator is aware

3    through frequent conversation with LPNs that they record full skilled nursing visits for these

4    short stops, in violation of 42 U.S.C. § 1395fff(c).  Relator frequently visits patients who have

5    been neglected as a result of LHC's practices.

6        55.    By and through their actions described above, Defendants have perpetrated a

7    significant fraud on the United States and the taxpayers who fund the Medicare program.

8                                    **COUNT ONE**

9        **PRESENTING OR CAUSING TO BE PRESENTED FALSE CLAIMS**

10                             **31 U.S.C. § 3729(A)(1)(A)**

11       56.    Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully

12   set forth herein.

13       57.    By and through the fraudulent schemes described herein, Defendant knowingly –

14   by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of

15   the information – presented or caused to be presented false or fraudulent claims to the United

16   States for payment or approval, to wit:

17            a.    Defendant submitted and continues to submit false claims for home health

18                 care provided to patients whom Defendant knew were not homebound or

19                 did not require skilled care and did not meet Medicare or Medicaid

20                 requirements for home health care, in violation of 42 U.S.C. § 1395f;

21            b.    Defendant submitted and continues to submit false claims for home health

22                 care PPS payments that were fraudulently inflated by false OASIS patient

23                 assessment data, in violation of 42 U.S.C. § 1395f and 42 U.S.C. § 484.20;

24            c.    Defendant submitted and continues to submit false claims for home health

25                 care that Defendant never provided and did not intend to provide; and

26



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 12
006180-11 421724 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

d.      Defendant submitted and continues to submit false claims for home health services premised upon Defendant's fraudulent certifications of compliance with Medicare regulations as made on CMS Forms 885A and 1450 and elsewhere.

58.     The Government has paid numerous false claims presented as a result of the schemes described above and will continue to make such payments.

59.     Defendant's fraudulent actions, as described *supra*, are part of a widespread, systematic pattern and practice of knowingly submitting or causing to be submitted false claims to the United States through fraudulent certification and re-certification of Hospice patients and fraudulent billing of the United States through Medicare or Medicaid.

60.     Defendant's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to Defendant and others by the United States through Medicare and Medicaid for such false or fraudulent claims.

WHEREFORE, Plaintiff-Relator demands judgment in her favor on behalf of the United States, and against Defendant, in an amount equal to treble the damages sustained by reason of Defendant's conduct, together with civil penalties permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Plaintiff-Relator may be entitled.

## COUNT TWO

### MAKING OR USING FALSE STATEMENTS OR RECORDS MATERIAL TO A FALSE CLAIM

### 31 U.S.C. § 3729(A)(1)(B)

61.     Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

62.     By and through the fraudulent schemes described herein, Defendant knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – made, used, or caused to be made or used, false records or statements material



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq*.] - 13
006180-11 421724 V1

1  to a false or fraudulent claim or to get a false or fraudulent claim paid or approved by the United

2  States, to wit:

3          a.    Defendant made and used, and continues to make and use, false records

4               reflecting nursing and therapy visits that were not medically necessary, did

5               not qualify as skilled services, or were rendered to patients who did not

6               qualify under the Medicare home health benefit, all in violation of 42

7               U.S.C. § 1395y(a)(1)(A) and the Medicare regulations cited *supra*;

8          b.    Defendant made and used, and continues to make and use, false OASIS

9               patient assessment data that inaccurately reflected patient conditions or

10              falsely emphasized conditions that were not part of the patients' legitimate

11              home health needs;

12         c.    Defendant made and used, and continues to make and use, false CMS

13              Forms 1450 that reflect fraudulently inflated OASIS scores and were

14              intended to – and did – elicit fraudulently inflated home health PPS

15              payments; and

16         d.    Defendant made and used, and continues to make and use, false CMS

17              Forms 1450 and 855A and other false certifications regarding past,

18              present, or future compliance with a prerequisite for payment or

19              reimbursement by the United States through Medicare or Medicaid when

20              in fact Defendant intended to – and did – defraud the Medicare system by

21              falsely claiming inflated home health PPS payments.

22     63.    The false records or statements described above were, and are, material to the

23 false claims submitted or caused to be submitted by Defendant to the United States and material

24 to the Government's decision to make payment on them.

25

26



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

64.     In reliance upon Defendant's false statements and records, the United States paid, and continues to pay, false claims submitted by Defendant that it would not have paid if not for those false statements and records.

65.     Defendant's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed by the United States for such false or fraudulent claims.

WHEREFORE, Plaintiff-Relator demands judgment in their favor on behalf of the United States, and against Defendant, in an amount equal to treble the damages sustained by reason of Defendant's conduct, together with civil penalties permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Plaintiff-Relators may be entitled.

**COUNT THREE**

**"REVERSE FALSE CLAIMS"**

**31 U.S.C. § 3729(A)(1)(G)**

66.     Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

67.     By and through the fraudulent schemes described herein, Defendant knowingly (and to this day) – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the United States, to wit:

        a.     Defendant knew and knows that it has received millions of dollars in home health PPS payments for patients who did not and do not qualify for the Medicare home health benefit, yet Defendant has taken no action to satisfy its obligations to the United States to repay or refund those payments and



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 15
006180-11 421724 V1

1    instead retains the funds and continues to fraudulently bill the United

2    States; and

3          b.      Defendant knew and knows that it has received millions of dollars in home

4    health PPS payments that were and are fraudulently inflated by false

5    patient OASIS assessment information, yet Defendant has taken no action

6    to satisfy its obligations to the United States to repay or refund those

7    payments and instead retains the funds and continues to bill the United

8    States.

9        68.    As a result of Defendant's fraudulent conduct, the United States has suffered

10   damage in the amount of funds that belong to the United States but are improperly retained by

11   Defendant.

12       WHEREFORE, Plaintiff-Relator demands judgment in her favor on behalf of the United

13   States, and against Defendant, in an amount equal to treble the damages sustained by reason of

14   Defendant's conduct, together with civil penalties permitted by 31 U.S.C. § 3729, attorneys' fees

15   and costs, and such other, different, or further relief to which Plaintiff-Relator may be entitled.

16

17       DATED:  March 3, 2011.

                               HAGENS BERMAN SOBOL SHAPIRO LLP

18

19                             By_____

20                                 Steve W. Berman

                              Shayne C. Stevenson

21                                 1918 Eighth Ave., Suite 3300

                              Seattle, WA  98101

22                                 Telephone:  (206) 623-7292

                              Facsimile:  (206) 623-0594

23

24

25

26


1918 EIGHTH AVENUE, SUITE 3300 · SEATTLE, WA  98101
(206) 623-7292 · FAX (206) 623-0594

1

2      FROSHIN & BARGER, LLC

3      /s James Barger
       James Fr. Barger Jr. (*pro hac vice pending*)
4      One Highland Place, Suite 310
       2151 Highland Avenue
5      Birmingham, Alabama 35205
       Telephone:  (205) 933-4006
6

7      Attorneys for Plaintiff-Relator Jane Doe

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



COMPLAINT FOR VIOLATIONS OF THE FEDERAL
FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*] - 17
006180-11  421724 V1